UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------X

LOOK ABOVE LLC,

            Plaintiff,

v.

PPE SOLUTIONS GROUP, LLC,

            Defendant.
X------------------------------------------------X

ECF # tbd

__ CV ___ (___) (___)

JURY TRIAL DEMANDED

*Related to 21-cv-04576 (PKC) (DCF)*

## COMPLAINT

LOOK ABOVE LLC, the Plaintiff in the action captioned above, by and through its attorneys, Sabino & Sabino, P.C., hereby makes for its Complaint as and against the Defendant PPE Solutions Group, LLC, as captioned above, and hereby alleges, as follows:

<u>Jurisdiction</u>

1. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. section 1332, for reason of complete diversity of citizenship of the parties, and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

2. Venue properly lies in this District pursuant to 28 U.S.C. section 1391, for reason that, among other things, the Defendant resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. *See* 28 U.S.C. § 1391(b)(1) and (2).

3. The instant matter is a "related case," specifically related to *3M Co. v. PPE Solutions Group LLC*, 21-cv-04576 (PKC) (DCF) (hereinafter the "Related Case"). *See* Local Civil Rule

1.6(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

## Introduction

4. The instant matter is nothing more than a straightforward commercial case. The Plaintiff Look Above LLC (herein after "Look Above") purchased some 64,800 protective masks from the Defendant PPE Solutions Group, LLC (herein after "PPE"). Look Above paid PPE $167,508.00. Shortly thereafter, Look Above learned from the 3M Company (herein after "3M") that the masks were counterfeit. Look Above immediately demanded a full refund from PPE. PPE refused, and, as of the date of the instant Complaint, PPE remains in unlawful possession of $107,268.00 of Look Above's money. Look Above seeks nothing more than the return of all of its remaining monies, interest, costs, and such other relief as this Court deems just and proper under the circumstances.

## The Parties

5. Look Above is a limited liability company organized under Delaware law, with its principal place of business located at 4 Barbara Place, Wilmington, Delaware 19808.

6. Look Above's sole members are Cecil and Ruthie Coutinho, a married couple.

7. Upon information and belief, PPE is a limited liability company organized pursuant to Wyoming law, with its principal place of business located at 395 Broadway, New York, New York 10013.

8. Upon information and belief, PPE's members are Kyle Barnette and John (a/k/a Yohan) Park.

9. Upon information and belief, both Messrs. Barnette and Park reside in the County of New York, State of New York.

10. Mr. Park has, in writing, held himself out to Look Above as an attorney admitted to practice in the States of New York and New Jersey.

## Statement of Facts

11. Look Above is a merchant that regularly deals in a variety of goods, typically media (books and DVDs), toys, and overstocked merchandise. Look Above purchases goods in lots from merchant sellers, and then resells those goods to other merchant buyers or, at times, end users.

12. Upon information and belief, PPE is a merchant that regularly deals in goods, including selling those goods to merchant buyers, such as Look Above.

13. In the marketplace where Look Above and PPE conduct business, it is the norm to buy and sell goods with the involvement of third parties, so called "intermediaries," a practice intended to protect the intellectual property rights of the participants. This includes shipping goods via a third party, and having the goods shipped to a third party warehouse or similar destination.

14. Nonetheless, the merchant buyer makes its payment directly to the actual merchant seller, typically via wire transfer or similar electronic means.

15. The goods are then shipped to a specified location, whereat the merchant buyer may, among other things, inspect the goods, determine if they are conforming goods, sell them to yet another merchant buyer, and otherwise exercise the customary privileges of ownership.

*Look Above purchases the masks from PPE*

16. In or about February, 2021, Look Above agreed to purchase, and PPE agreed to sell, a lot of some 64,800 protective masks, specifically of the now ubiquitous "N95" variety, and manufactured (or so Look Above believed) by 3M.

17. Look Above's entered into this bargain in the belief that it was purchasing genuine 3M products.

18. Look Above was informed that the purchase price for the masks was $167,508.00.

19. Look Above was instructed by Connecting World Merchandise, LLC ("CWM"), an intermediary, to wire transfer its $167,508.00 payment directly to PPE's account at People's United Bank.

20. As is customary in the marketplace in which Look Above and PPE operate, the purchase price, PPE's bank information, including PPE's account number, and other pertinent information was set forth in an invoice apparently generated by CWM.

21. On 12 February 2021, Look Above, as instructed, wired the entire $167,508.00 payment into PPE's bank account.

22. Look Above learned that the masks it had purchased were identified by a certain batch number, and would be shipped to a third party warehouse in Secaucus, New Jersey.

*Look Above learns that the masks are counterfeit*

23. On 17 February 2021, less than a week after paying the full $167,508.00 purchase price to PPE, no less than four significant events occured, all that same day.

4

24. First, Look Above learned from a 3M website that the batch of masks it had just purchased from PPE were counterfeit. The 3M notice identified the masks by batch number, and declared the masks purchased by Look Above were counterfeit.

25. Second, Look Above then immediately cancelled the truck that was to pick up the masks, and refused to accept or otherwise transact further in the counterfeit masks.

26. Third, Look Above's immediately contacted PPE, refused to take delivery, and, most important of all, demanded a full refund.

27. Fourth, PPE adamantly refused to refund any money to Look Above, maintaining that the masks were genuine. Instead, Mr. Park, one of PPE's principals, transmitted a letter to Look Above that same day, attesting that the masks were genuine, and attaching to his letter certain emails, purportedly from overseas offices of 3M, which Mr. Park alleged verified PPE's claims that the masks were genuine.

28. Upon information and belief, said information and belief arising from subsequent events, Look Above believes that the emails attached by Mr. Park to his letter are false and misleading.

29. Look Above never accepted the goods, never inspected the goods, and never took delivery of same.


*PPE refuses to refund Look Above's money, instead denying the masks are counterfeit*

30. At all relevant times, including, but not limited to, February, March, and April of 2021, Look Above made repeated demands upon PPE to make a full refund of the $167,508.00 purchase price.

31. PPE adamantly refused each and every time or otherwise ignored Look Above's demands.

32. At certain times in 2021, PPE unilaterally pursued a course of allegedly selling a portion of the masks in questions to third parties, and then, once PPE was allegedly paid by these third parties, PPE refunded a small portion of money to Look Above.

33. At no time did Look Above agree to or condone this course of action; rather, Look Above remained steadfast in demanding a full refund.

34. For reason of PPE's unilateral actions to purportedly resell a portion of the masks to third parties, in or about March and June of 2021, PPE returned certain funds to Look Above, aggregating to $60,240.00.

35. PPE has adamantly refused and continues to refuse to refund the remaining $107,268.00 balance to Look Above.

*3M informs Look Above that the masks are counterfeit*

36. 3M served Look Above with a cease and desist letter, dated 30 April 2021.

37. In addition to demanding that Look Above cease and desist from selling or otherwise transacting in the counterfeit masks, 3M made related demands, including, but not limited to, that Look Above provide 3M with a list of Look Above's customers, that Look Above fully cooperate with 3M in removing the masks from the marketplace, and cooperate fully with 3M in taking other remedial measures.

*3M commences the Related Case against PPE*

38. Subsequently, Look Above became aware of the Related Case referenced herein above, which, upon information and belief, 3M instituted against PPE on or about 21 May 2021.

39. The commencement of the Related Case confirmed to Look Above that the masks were counterfeit or, at the very least, their authenticity was in serious doubt.

40. Even after the commencement of the Related Case, PPE adamantly refused all of Look Above's demands for a refund.

41. Look Above continued to demand a refund from PPE during the second half of 2021, and into the early months of 2022.

42. PPE either rejected or simply ignored all of Look Above's repeated demands for a refund.

43. As of the date of the instant Complaint, PPE has made no further refunds, and has unlawfully retained $107,268.00 of Look Above's funds.

<u>Causes of Action</u>

## COUNT I.

### (Unjust Enrichment)

44. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 43, inclusive, as stated herein above.

45. PPE was enriched by its receipt of Look Above's original wire transfer of $167,508.00, and continues to be enriched by its unlawful retention of the remaining $107,268.00 balance.

46. The enrichment of PPE was at Look Above's expense.

47. The circumstances are such that in equity and good conscience PPE should return the $107,268.00 to Look Above.

48. Look Above and PPE are in privity, but, in the alternative, Look Above and PPE need not be in privity in order to sustain a claim for unjust enrichment.

49. PPE has been and continues to be unjustly enriched, and Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## COUNT II.

### (Common Law Conversion)

50. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 49, inclusive, as stated herein above.

51. PPE converted Look Above's funds, specifically, the $167,508.00 wire transferred by Look Above to PPE on or about 12 February 2021.

52. PPE was given custody of Look Above's funds as the purchase price for the masks.

53. Lawful demand was made by Look Above for the return of its funds, and that demand was refused by PPE.

54. PPE has retained $107,268.00 of Look Above's funds without permission, and thereby converted said funds to its own use.

55. PPE has damaged Look Above by the loss of $107,268.00 remaining from Look Above's original wire transfer of $167,508.00, and the foreseeable and consequential damages arising from said conversion of Look Above's funds, in an amount to be determined at trial, but no less than $107,268.00.

56. PPE committed common law conversion as and against Look Above, and for which Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## COUNT III.

### (In the Alternative, Breach of Contract)

57. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 56, inclusive, as stated herein above.

58. In the alternative, an agreement exists between Look Above and PPE, created when Look Above offered to purchase the masks from PPE, Look Above paid consideration, in the form of the original wire transfer of $167,508.00, and consummated when PPE accepted by shipping or arranging the shipment of the masks to the third party New Jersey warehouse for the benefit of Look Above.

59. The foregoing actions by Look Above and PPE constituted an offer by Look Above, acceptance by PPE via performance, to wit, shipping the masks, and consideration, to wit, Look Above's original wire transfer of $167,508.00.

60. Look Above and PPE mutually assented to this agreement, and further agreed to be bound thereby.

61. Look Above adequately performed the agreement by making the original $167,508.00 wire transfer to PPE's bank account.

62. PPE breached the agreement by, among other things, not supplying the promised consideration to Look Above, and continues to breach the agreement by refusing to refund Look Above's remaining balance of $107,268.00.

63. Look Above has been damaged by PPE's unlawful refusal to refund the $107,268.00 balance.

64. For reason of PPE's breach of contract, Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## COUNT IV.

### (In the Alternative, Breach of Implied Contract)

65. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 64, inclusive, as stated herein above.

66. In the alternative, an implied contract exists between Look Above and PPE.

67. The implied contract was created when Look Above paid consideration, in the form of the original wire transfer of $167,508.00.

68. Look Above and PPE mutually assented, had legal capacity, and the subject matter of the implied contract was legal.

69. PPE breached the implied contract by, among other things, not supplying the promised consideration to Look Above, and continues to breach the agreement by refusing to refund Look Above's remaining balance of $107,268.00.

70. Look Above has been damaged by PPE's unlawful refusal to refund the $107,268.00 balance.

71. For reason of PPE's breach of implied contract, Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## COUNT V.

### (In the alternative, Rejection, *et cetera* pursuant to N.Y.U.C.C.)

72. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 71, inclusive, as stated herein above.

73. In the alternative, Look Above and PPE are merchants regularly engaged in the sale of goods.

74. Look Above offered to purchase goods from PPE, to wit, the masks at issue herein.

75. PPE accepted Look Above's offer by, among other things, performance, to wit, shipping the masks.

76. Look Above paid valuable consideration to PPE, to wit, the original wire transfer of $167,508.00.

77. Look Above rejected the masks prior to any delivery by PPE, for reason that, among other things, Look Above had learned that the masks were counterfeit.

78. Look Above was entitled to reject the masks for reason that they were nonconforming goods.

79. Look Above's rejection was seasonable.

80. Look Above's rejection was made in good faith.

81. Any nominal requirement by Look Above to inspect the goods was rendered futile once Look Above learned the masks were counterfeit.

82. Look Above provided PPE with ample notice and opportunity to ship conforming goods.

83. Instead of remedying the nonconformity by shipping replacement conforming goods, PPE blithely persisted in its claim that the masks were genuine, even in the face of evidence to the contrary, including, but not limited to, 3M's declarations that the masks were counterfeit, 3M's subsequent commencement of the Related Case referenced herein above, and related events.

84. Look Above's rejection was further validated as proper and seasonable by, among other things, 3M's service of the "cease and desist" letter upon Look Above, 3M's commencement of the Related Case against PPE, as referenced herein above, and related events.

85. Look Above's commercial rights and privileges, as a matter of New York's Uniform Commercial Code, were violated by PPE. *See, inter alia*, N.Y.U.C.C. § 2-206, § 2-601, § 2-602, *and* § 2-606.

86. For reason of PPE's violation of Look Above's rights and privileges as a matter of commercial law, Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## COUNT VI.

### (In the Alternative, Promissory Estoppel)

87. Look Above repeats and realleges all of the allegations contained in Paragraphs 1 through 86, inclusive, as stated herein above.

88. In the alternative, PPE made a clear and unambiguous promise to Look Above, to wit, to sell and deliver to Look Above masks that were legitimate goods, and not counterfeit.

89. Look Above reasonably and foreseeably relied upon PPE's promise.

90. Look Above was damaged by its reliance upon said promise of PPE.

91. For reason of promissory estoppel, Look Above is thereby entitled to a recovery as against PPE in an amount to be determined at trial, but no less than $107,268.00.

## SUGGESTION FOR MEDIATION AND/OR ARBITRATION

92. Look Above wishes to respectfully apprise the Court that it is open to resolving the instant controversy by means of alternative dispute resolution, be that mediation or arbitration (binding or nonbinding).

93. To be quite sure, the just resolution of the instant controversy is of great importance to Look Above.  While the amount in controversy might not seem much in this day and age, it is highly significant to a small business such as Look Above.

94. That being said, Look Above is cognizant of two influential factors.  One, no matter how important this case is to Look Above, it represents a diversion of precious judicial resources from what are, by any objective measure, more pressing cases.

95. Second, this District has long had a highly successful ADR program, including, but not limited to, court-annexed mediation.

96. To that latter point, Look Above respectfully draws the Court's attention to the fact that its counsel undersigned below has been a member of this Court's mediation program since its inception.  As such, the undersigned counsel is well familiar with the efficacies of this District's mediation program, and holds the skills of his fellow mediators and arbitrators in high esteem.

97. For all these reasons, but with a full reservation of all of Look Above's rights and privileges to fully litigate the instant controversy, Look Above wishes to inform the Court that it is willing to contemplate the mediation or arbitration (binding or nonbinding) of this case.

## Demand for a Jury Trial

98. Pursuant to Federal Rule of Civil Procedure 38(b)(1), Look Above respectfully demands a trial by jury.

## Conclusion

WHEREFORE, in conclusion, the Plaintiff Look Above LLC is entitled to judgment as and against the Defendant PPE Solutions Group, LLC in an amount to be determined at trial, but in an amount no less than $107,268.00, plus interest, costs, and attorneys' fees, and such other relief as this Court deems just and proper under the circumstances.

Dated: 27 April 2022
       Mineola, New York

SABINO & SABINO, P.C.

/s/ Anthony Michael Sabino

By: _____
Anthony Michael Sabino (AMS-0578)

ATTORNEYS FOR THE PLAINTIFF
LOOK ABOVE LLC

92 Willis Avenue, 2d Floor
Mineola, New York 11501
(516) 294-3199
Fax: (516) 747-9405
Anthony.Sabino@sabinolaw.com

AMS/dal
FINAL LOOK ABOVE COMPLAINT v.1